**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50158**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **Filed: January 10, 2025** |
| Plaintiff-Respondent, ) | |
| ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | **THIS IS AN UNPUBLISHED** |
| KIERAN ALEXANDER GORDON, ) | **OPINION AND SHALL NOT** |
| ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Ross Pittman, District Judge.

Judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Kieran Alexander Gordon appeals from the judgment of conviction for felony battery on a law enforcement officer; misdemeanor battery; and misdemeanor resisting, obstructing, or delaying an officer. Gordon argues the district court erroneously concluded that evidence of his previous interaction with a bartender and law enforcement officers on the night of his arrest was relevant to establish his identity and his knowledge of the officers' status as law enforcement officers. Gordon further argues the district court erred by admitting video exhibits that the court previously held were prohibited under the motion in limine. Gordon argues the cumulative effect of the alleged errors requires a reversal of his judgment of conviction. The State contends the body video exhibits were properly admitted to show Gordon's identity and his knowledge of the status of the law enforcement officers. Further, the State argues Gordon misinterpreted the scope of the

1

district court's ruling on the motion in limine and the district court did not err in admitting the exhibits. For the following reasons, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Gordon was charged with two counts of felony battery upon an officer, Idaho Code §§ 18-915(3)(a)(b), -903(a); one count of misdemeanor battery, I.C. § 18-903; and one count of misdemeanor resisting, obstructing, or delaying an officer, I.C. § 18-705. Prior to trial, Gordon filed a motion in limine and then an amended motion in limine to exclude testimony or evidence under Idaho Rules of Evidence 401, 404(b), and/or 403 regarding Gordon's prior criminal convictions, conduct between Gordon and the bartender, descriptions of Gordon's combative nature, and the use of leg restraints and a spit hood after Gordon was arrested and awaiting transport to jail. The State objected to the motion in limine arguing the challenged acts were interconnected to, inseparable from, and intrinsic to the crimes alleged to have been committed by Gordon. The State also argued that the evidence was relevant to identification and Gordon's knowledge of the police officers' status.

The following facts provide context for the motion in limine. On the night Gordon was arrested, officers were twice called to a hotel following reports of a belligerent patron. Law enforcement was first called because a patron, Gordon, had been drinking at the hotel bar, became agitated, jumped the bar, and tried to kiss the bartender when she would not serve him any more alcohol. Gordon was sitting outside his hotel room when law enforcement contacted him; he invited the officers into his room. The officers had a brief conversation with Gordon about the incident at the bar. Gordon was told to stay in his hotel room for the remainder of the evening and he agreed to do so. However, Gordon did not remain in his room and instead returned to the hotel lobby and engaged in an altercation with another patron, which necessitated the second call to law enforcement approximately twenty to thirty-five minutes after the first call. When officers attempted to talk to Gordon about what happened, Gordon became agitated and physical with the officers.

The district court granted in part, denied in part, and reserved ruling in part on the motion in limine. The district court granted the motion in limine regarding Gordon's prior criminal convictions. The district court granted, in part, the motion in limine, as it related to the first service call on the night of the arrest. The district court prohibited the State and its witnesses from

2

referring to the underlying details of the Gordon's prior conduct during his interaction with the bartender and directed the State to instruct its witnesses to not "go into the nature of the alleged misconduct, other than to say they were called for service for alleged disturbance or something like that." However, the district court allowed the State to call police officers to say, "Yes, this is the person we identified and, Yes, we identified ourselves as officers." Gordon asked for clarification on what was permitted under the motion in limine ruling, and the district court stated,

> Well, there has to be, I think, some explanation without going into the detail. Police officers were called to the scene as a result of some allegation. And I don't care what the language is, but I don't want it necessarily to turn into called for service because this defendant jumped over the bar and assaulted the bartender, which is not charged as anything. I think it qualifies for a potential area that could cause some unfair prejudice to the defense.

The district court reserved ruling on the motion in limine regarding evidence or testimony about Gordon's post-arrest conduct until the court could determine how the evidence would come in and the court could then evaluate the potential probative and prejudicial effect.

At trial, Exhibits 5 and 6 were introduced and published to the jury. Exhibit 5 is Officer Childers' body camera recording that shows the initial encounter between Gordon and law enforcement that began outside of Gordon's hotel room and ended inside Gordon's hotel room. Portions of the exhibit were muted to comply with the ruling on the motion in limine regarding this evidence. Exhibit 6 is Officer Johnson's body camera recording which shows the second encounter when Gordon was detained and handcuffed in the lobby of the hotel and taken to the patrol car for transport to jail. Although the district court reserved ruling on Exhibit 6 at the motion in limine hearing, the court admitted Exhibit 6 at trial.[1]

Following a trial, Gordon was found guilty of one count of felony battery upon an officer for biting one of the officers and not guilty of the other count of felony battery upon an officer for kicking one of the officers. Gordon was also convicted of the two misdemeanor charges. The district court entered a judgment of conviction and sentenced Gordon. Gordon appeals.

## II.

## STANDARD OF REVIEW

Idaho appellate courts review a trial court's evidentiary rulings for an abuse of discretion. *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019). When a trial court's

---

[1] The district court admitted testimony regarding the use of leg restraints and the spit hood at trial. Gordon does not challenge that ruling on appeal.

3

discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to

4

all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

## III.

## ANALYSIS

Gordon contends the district court erred when it overruled his renewed objections to Exhibits 5 and 6 during trial because the videos contained improper I.R.E. 404(b) evidence which should have been excluded based on the order on the motion in limine. Gordon argues the cumulative effect of admitting the evidence resulted in prejudice and his conviction should be reversed. The State argues Exhibit 5 is relevant to establish Gordon's identity because it shows his interactions with law enforcement where he provided his state identification and where he learned the officers' status as officers. As to both Exhibits 5 and 6, the State argues Gordon misinterprets the scope of the motion in limine to be broader than it actually is because the district court clarified that evidence of the first interaction was not prohibited, only the details and underlying facts regarding the alleged assault during that interaction were prohibited. Therefore, neither Exhibit 5 nor Exhibit 6 violated the motion in limine and were properly admitted. The State also argues that even if the exhibits were erroneously admitted, the error was harmless.

Exhibit 5 shows three officers approaching Gordon while he was sitting outside his hotel room. Gordon believed he was locked out of his room, and the officers engaged Gordon in conversation while he used his room key to enter his room. Once inside Gordon's hotel room, Officers asked for Gordon's identification, and he provided his driver's license. Officers asked Gordon what was going on and why they were there since he seemed to be reasonable. Gordon explained he had been talking to the bartender about the war in Afghanistan and politics and the conversation got emotional. Officer Childers asked Gordon for details of what happened because police were there for a reason. The audio is then muted, and the sound returns when the officers tell Gordon that he can continue to stay at the hotel as long as he stays in his room. An officer can be heard warning Gordon that if he "continue[s] to cause problems," the officers will be back and he will be removed from the hotel. Officers then remind Gordon that he is in no condition to drive, and with inclement weather predicted, his best course of action is to stay in his room and sober up.

Exhibit 6 is another video taken at the hotel later that same evening. In the exhibit, Officer Johnson handcuffs Gordon in the hotel lobby and asks Gordon why the officers had to come back. Officer Johnson then led Gordon to a sitting area away from the front desk. Officer Johnson again

5

asks Gordon why officers had to come back and referenced the prior interaction when Gordon had been reasonable, and Officer Johnson asks why Gordon was being unreasonable now.

## A.      Relevance of Exhibit 5, Officer Childers' Body Camera Footage

Gordon argues that Exhibit 5 was not relevant to a disputed issue. Gordon further contends that Exhibit 5 should have been excluded because it contained improper propensity evidence and, alternatively, the evidence had been excluded pursuant to the district court's ruling on the motion in limine. One problem with this argument is that in the district court, trial counsel did not argue that Exhibit 5, in its entirety, was inadmissible. Instead, trial counsel defined a very narrow category of statements contained in Exhibit 5 as inadmissible. That narrow category dealt with the nature of Gordon's interaction with the bartender. In the district court, defense counsel argued:

> I recognize that the State may have an interest in having Mr. Gordon identified; however, there are ways to do that without bringing up the underlying basis of the contact. And that basis of the contact was really there was a response to an allegation of assault on a bartender, law enforcement, you know, had contact with Mr. Gordon outside his hotel room. There was more or less an indication that Mr. Gordon needed to stay in the hotel room and then law enforcement departed. Again, no charges arising out of that initial encounter.

Defense counsel continued: "So Defense has concerns about basically the nature of the contact, not necessarily the contact itself, but the actual nature, the underlying reason of the contact."

Following the State's argument on the admissibility of the evidence, defense counsel again clarified the scope of its objection to the evidence:

> Nothing about the underlying basis for Mr. Gordon's first contact with officers is relevant at all to the second contact. Now, I understand that the State's talking about identification and law enforcement in uniform, *but, your Honor, what Defense is asking is not that there be no conversation about the first contact; what Defense is asking is that the underlying basis for the contact not be discussed, not presented.* No testimony, no evidence about that provided at trial.
> The issue of identification can certainly be addressed, but, again, as I indicated before, it doesn't need to go into 404(b). It sounds like the State's conceding that it would not be going into 404(b) evidence if it were simply eliciting the identification. That was done by a driver's license. But, again, there doesn't need to be any information in relation to the reason why law enforcement [was] there or anything like that.

(Emphasis added.) Thus, in the district court, defense counsel never argued Exhibit 5, in its entirety, should be excluded; as a result, Gordon's argument that Exhibit 5, in its entirety, should have been excluded, is unpreserved. Appellate review is limited to the arguments presented to the

trial court. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017); *see also State v. Papse*, 167 Idaho 429, 431, 470 P.3d 1238, 1240 (Ct. App. 2020).

Gordon argues that even if Exhibit 5 had some minimal relevance to his identity or his knowledge of the officers' status as officers, the probative value substantially outweighed the risk of undue prejudice; thus, Exhibit 5 was admitted in violation of I.R.E. 404(b) and 403. Gordon argues Exhibit 5 is not relevant to establish identity because his identity could easily be established during the second interaction through witness testimony and Exhibit 6. Gordon also contends his identity was not in dispute and, therefore, the district court erred in admitting other-acts evidence under I.R.E. 404(b) for that purpose. He argues that the Exhibit 5 video was unnecessary to demonstrate his knowledge about the officers' status as officers because the officers were in uniform when they arrived for the second interaction. Thus, any evidence from the first interaction was unlikely to make his identity or his knowledge of the officers' status as officers more likely true.

The State contends Exhibit 5 is relevant to show that during that encounter, officers identified Gordon with his driver's license and, thus, the exhibit was admissible under I.R.E. 404(b) to affirmatively establish identity for the crimes charged during the second interaction. The State argues that the body camera footage also established Gordon's knowledge that he was dealing with law enforcement, and their presence was in their official capacity. Therefore, when officers showed up the second time, Gordon knew the officers were on duty which is relevant to the battery on law enforcement charges.

In the district court, defense counsel did not object to the video being admitted to establish identity. In fact, as it related to the evidence from Exhibit 5, defense counsel stated: "The issue of identification can certainly be addressed." Gordon cannot take a contrary position on appeal than he did in the trial court; thus, we decline to address this part of his argument.

Idaho Rule of Evidence 404(b), provides:

> (1)     Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2)     Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, the prosecutor must:
>> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

7

(B) do so reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice.

This rule prohibits the introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which an I.R.E. 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

In this case, Gordon does not challenge that the interactions with the officers occurred. Therefore, we address only the relevancy and unfair prejudice issues. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

The district court concluded that some of the evidence contained in Exhibit 5 was relevant to prove Gordon's identity relative to the crimes charged and his knowledge of the officers' status as law enforcement officers to prove some of the elements of the charged crimes arising from the second interaction. As to the content of the video, the district court stated: "I do find it is potentially relevant for purposes of identifying the defendant and I do find that it [has] potential relevance for trying to prove that the defendant should have known he was dealing with law enforcement officers at the second encounter." The district court then considered whether reference to the facts of the alleged assault on the bartender was more probative or prejudicial under I.R.E. 403. The district court found that those facts could potentially be more prejudicial

8

than probative by introducing potential propensity type evidence. Because the prejudicial effect of the fact that the alleged assault outweighed the probative value, the district court limited references to the initial encounter stating:

> I think they are entitled to call the police officers who say, Yes, this is the person we identified and, Yes, we identified ourselves as officers and any other observations that they made during their interaction there, but we don't have to go into the nature of the alleged misconduct or wrongful conduct.

The district court did not err in finding the evidence contained in Exhibit 5 was relevant for purposes of establishing identity or knowledge of law enforcement for the second interaction.

Exhibit 5 depicts uniformed officers checking Gordon's driver's license and verifying his address while the officers talked with Gordon. Although Gordon's identity could also be established by Exhibit 6, nothing precluded the State from also using Exhibit 5 to establish identity. Evidence is not rendered irrelevant just because it can be adduced through more than one source. The video from the first encounter was relevant evidence from which the State could prove Gordon's identity and his knowledge regarding the officers and their status. Exhibit 5 also made it more likely that Gordon knew the officers were engaged in their official duties during the second interaction.

Gordon relies on *State v. Teasley*, 138 Idaho 113, 118, 58 P.3d 97, 102 (Ct. App. 2002) for the proposition that the other acts evidence was irrelevant because his identity was not in dispute, and, therefore, any video footage from the first interaction was irrelevant. *Teasley*, 138 Idaho at 118, 58 P.3d at 102. In *Teasley*, a mother lied to the police about whether her son was inside her apartment. *Id.* at 115, 58 P.3d at 99. Upon executing a search warrant, the son was found on her couch, and Teasley was charged with harboring a felon. *Id.* During Teasley's trial, the State asked her if law enforcement had ever asked her if she had previously refused to identify her son for law enforcement. *Id.* at 117, 58 P.3d at 101. Teasley objected to the question as irrelevant. *Id.* The court overruled the objection, finding the prior act testimony went to "the issue of contact with" police. *Id.* Teasley then testified that she had not tried to misidentify her son to the police. *Id.* Testimony established she had lied to law enforcement about eight and a half months earlier when officers were trying to locate her son and she misled officers about his presence in her vehicle. *Id.* at 118, 58 P.3d at 102. The Supreme Court found the evidence of the prior bad act was not relevant to the district court's rationale for admission and that the district court abused its discretion for

failing to consider the prior bad act evidence under any recognized exception under I.R.E. 404(b). *Id.*

Gordon argues that just as in *Teasley*, any information about the incident at the bar from the first interaction was irrelevant because nothing about the second interaction had anything to do with the underlying facts of the first interaction. Gordon argues that his identity and the officers' status were not in dispute, and it was therefore improper to admit other-acts evidence to prove those facts under I.R.E. 404(b). First, we note that nothing about the incident at the bar, beyond the fact of an emotional conversation with the bartender, was admitted as evidence. Additionally, *Teasley* is distinguishable because in *Teasley* the prior act testimony was admitted to show Teasley's prior contact with law enforcement, which is not a recognized exception to I.R.E. 404(b) and was not material to the dispute. Here, the prior act evidence offered and admitted in this case was relevant to the charged crimes, recognized as exceptions under I.R.E. 404(b), and were required elements the State had to prove for the charges.

Finally, "[T]here is no requirement that evidence be relevant only to a disputed issue under I.R.E. 401, only that evidence be probative and material." *Garcia*, 166 Idaho at 671, 462 P.3d at 1135.

## B. Exhibits 5 and 6 Did Not Violate the Motion in Limine

Gordon contends the district court erred in admitting Exhibits 5 and 6 because the exhibits included information regarding Gordon's alleged assault on the bartender, in violation of the district court's order on the motion in limine. Gordon argues Exhibits 5 and 6 are more prejudicial than probative because some of the questions and statements improperly reference Gordon's behavior earlier at the bar. The State contends the district court recognized its discretion and appropriately admitted the exhibits in conformity with the motion in limine. The State argues the admitted exhibits only generally described the reason for the officers' first contact, which was specifically permitted. The State explained that although Exhibit 5 referenced a conversation that Gordon was not entirely peaceful, the video footage did not include any reference to Gordon jumping over the bar or the alleged assault on the bartender.

The district court, in its ruling on the motion in limine, stated "there has to be, I think, some explanation without going into the detail. Police officers were called to the scene as a result of some allegation." The district court continued, stating,

10

I don't find there being unfair prejudice letting the police officers say we were called to the scene because there was a disturbance in the bar. I don't think that is --I think that's still factually accurate and I think it does not pose a risk of unfair prejudice. And whether it's a disturbance or a kerfuffle or whatever phrase the State's witnesses want to use, as long as it doesn't cross the line of saying, Yeah, we were called there because the bartender got attacked. I don't have any heartburn in that.

The district court determined that some evidence about the first service call was relevant, and as long as specific details about the nature of the disturbance were not admitted, the evidence was more probative than prejudicial.

Gordon contends that questions about what happened at the bar and references to an emotional conversation violate the order on the motion in limine and are propensity type evidence that unfairly prejudiced Gordon. We disagree. In Exhibit 5, Gordon relays the emotional nature of a conversation with the bartender. In the video, an officer references that Gordon's previous conversation was not a completely peaceful conversation which is why the police were called, but there are no details about what was not "completely peaceful." There is no discussion of Gordon jumping over the bar and allegedly assaulting the bartender. In Exhibit 6, Officer Johnson asks why officers had to return, stating "I thought we had this figured out, buddy." Officer Johnson also indicated to Gordon that he had agreed before that his behavior was unreasonable and Gordon had agreed to stay in his room. Contrary to Gordon's assertions, this does not automatically lead a rational juror to jump to the conclusion that Gordon attacked or threatened the bartender. Factual statements to explain why officers had reason to ask for his identification in his hotel room did not create the risk that jurors would find Gordon guilty because of his propensity for being unreasonable. Exhibits 5 and 6 did not include any audio reference to the details of the assault at the bar. The audio in the videos admitted at trial was limited to questions and responses about Gordon's identity and open-ended questions about what happened. Any specific reference about what occurred between Gordon and the bartender was muted. Contrary to what Gordon argues, the references to an emotional and sensitive conversation do not automatically cause a rational juror to assume Gordon had a character for "acting in an unreasonable manner." The jury finding Gordon not guilty of battery on a law enforcement officer for kicking Officer Johnson, despite the inclusion of the allegedly prejudicial evidence, demonstrates that the jury did not draw the improper inferences about which Gordon speculates. The district court did not err in admitting State's Exhibit 5 and 6.

11

**C.    Cumulative Error**

Gordon contends that admitting the body camera footage during trial caused cumulative errors resulting in undue prejudice. Gordon argues that when the two exhibits are viewed together, it creates a "more complete and clear" picture that Gordon was "unreasonable, crazy, and non-peaceful" and "the incident at the bar involved Mr. Gordon attacking or threatening the bartender." The State argues that Gordon has failed to establish more than one error, a necessary predicate to a finding of cumulative error.

"The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's constitutional right to due process." *Dunlap v. State*, 141 Idaho 50, 65-66, 106 P.3d 376, 391-92 (2004) (quoting *State v. Sheahan*, 139 Idaho 267, 286, 77 P.3d 956, 975 (2003)). "In order to find cumulative error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors when aggregated, denied the defendant a fair trial." *Id.* "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Parker*, 157 Idaho 132, 149, 334 P.3d 806, 823 (2014).

Having determined that the district court did not err in admitting the body camera footage from Officers Childers and Johnson through Exhibits 5 and 6, the cumulative error doctrine does not apply in this case.

## IV.
## CONCLUSION

The district court did not err in admitting Exhibits 5 and 6 because they were relevant to establishing identity and Gordon's knowledge of law enforcement officers' status as officers. Therefore, we affirm the judgment of conviction.

Chief Judge GRATTON and Judge TRIBE **CONCUR**.